* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Baddour and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Baddour with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The date of the accident is March 2, 2004.
2. The parties are bound by and subject to the Workers' Compensation Act.
3. The employment relationship existed between the employee and the employer at all times relevant to this claim.
4. The average weekly wage is to be determined by wage transcript.
5. This is a claim for a ten-percent penalty and for sanctions for failure to file IC Forms.
6. The employee has been temporarily totally disabled since March 2, 2004.
 * * * * * * * * * * * ISSUES
Pursuant to the parties' Pre-Trial Agreement before the Deputy Commissioner, the issues presently before the Commission are:
 (a) Whether the plaintiff is entitled to a ten percent (10%) penalty?
 (b) Whether the plaintiff is entitled to sanctions for the failure of defendants to file I.C. forms?
 (c) Whether the defendants are entitled to a ten percent (10%) reduction of plaintiff's benefits?
It is noted that the parties stipulated to a Form 22 at the hearing before the Deputy Commissioner. Following the hearing, the defendants Staff Mark and AIG submitted a revised Form 22 that has not been stipulated into evidence.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, the plaintiff was a twenty-five year old native of Mexico who had lived in the United States for approximately two years.
2. The plaintiff was employed by defendant Staff Mark, a temporary employment agency. Staff Mark assigned the plaintiff to work as a temporary employee for defendant CF Foods, a dry foods packaging and processing company.
3. The plaintiff was assigned to CF Foods as a general laborer. As a general laborer, it was understood that the plaintiff would not be operating any heavy machinery, such as forklifts or cherry pickers.
4. Pursuant to an express contract, CF Foods paid Staff Mark for the plaintiff's services based upon the general labor classification, and Staff Mark in turn paid the plaintiff. The hourly rate charged by Staff Mark for a general laborer is less than the hourly rate for a higher skilled worker who is certified to operate heavy machinery.
5. Initially, the plaintiff was assigned work within the general labor classification, such as recycling products that were damaged by insects. In this job, the plaintiff would break open bags of rice and beans and put the contents in a container. CF Foods later assigned the plaintiff work that involved cleaning up around a production line machine. The plaintiff's initial jobs did not involve the operation of heavy machinery.
6. At some point, CF Foods moved the plaintiff to a job in which he was responsible for providing the production line with rolls of plastic wrap, or "film," used to wrap the finished products. This job required the plaintiff to operate a powered industrial truck called an "order picker" or "cherry picker." The rolls of plastic wrap were stored on shelves as high as 30 feet and weighed between 50 to 60 pounds. The plaintiff used the order picker to lift himself into the air to retrieve the rolls of plastic wrap from the shelves.
7. The plaintiff accepted the assignment to operate the order picker from defendant CF Foods and performed the work at the direction and under the supervision of defendant CF Foods.
8. On March 2, 2004, while performing work for defendant CF Foods, the plaintiff sustained a compensable injury by accident when he fell approximately 15 feet from the order picker machine that he was operating and landed on a concrete floor. As a result, the plaintiff sustained a spinal cord injury.
9. Defendants Staff Mark and AIG accepted the compensability of the plaintiff's injury and have paid medical expenses and ongoing temporary total disability benefits.
10. The order picker operated by the plaintiff is considered a powered industrial truck. The occupational safety and health laws and regulations of North Carolina require that all operators of powered industrial trucks be trained and authorized before operating such vehicles.
11. The weight of an order picker and the height at which it operates make it capable of causing serious injury.
12. Properly trained operators are issued a certificate authorizing them to operate heavy machinery such as an order picker.
13. The plaintiff was never properly trained in the operation of the order picker, was never given proper instructions about the use or non-use of a safety harness, and was never certified to operate such a machine.
14. The plaintiff was operating the order picker while under the direct supervision and control of defendant CF Foods. Defendant CF Foods willfully failed to train and certify the plaintiff in the operation of the order picker as required by the occupational safety health laws and regulations of North Carolina, and such failure was the proximate cause of injury to the plaintiff.
15. As the plaintiff had not received proper training regarding the operation of the order picker, including the use of a safety harness, the plaintiff's injury was not caused by his willful failure to use a safety appliance, perform a statutory duty, or to comply with a rule or regulation adopted by the employer.
16. The plaintiff's OSHA expert, James Brown Howard, testified that there was no evidence that defendant Staff Mark had any knowledge before the March 2, 2004 accident that the plaintiff was operating the order picker vehicle. Based on his review of the documents relating to the investigation of this matter, Mr. Howard was of the opinion that "there was [a] knowledgeable violation of the requirements for training and for prohibiting an individual who was not properly trained from operating that vehicle. . . ." He further testified that, based upon the documentation provided to him, "there was nobody there qualified to give the training because even the discussions post event with the regard to the placement of a pallet on the forks, the use of a, quote, `harness when up high,' is inconsistent with proper operation of the vehicle anyway." Based upon his training as an OSHA inspector, Mr. Howard was of the opinion, and the Full Commission finds as fact, that defendant CF Foods carried the higher burden of ensuring the plaintiff's safety because defendant CF Foods was in the better position to prevent a hazard by providing proper training. Thus, the Full Commission finds that defendant Staff Mark exercised no control over the plaintiff's job duties or otherwise supervised the plaintiff while working at defendant CF Foods. Further, defendant Staff Mark had no responsibility for placing the plaintiff on the order picker from which he sustained his injury.
17. Defendants Staff Mark and AIG did not timely file a Form 19 or Form 60 in this matter. However, defendants Staff Mark and AIG did begin paying temporary total disability compensation on or about April 8, 2004, approximately five weeks after the plaintiff was injured.
18. The parties stipulated to a Form 22 at the hearing before the Deputy Commissioner; however, following the hearing, defendants Staff Mark and AIG submitted a revised Form 22 that has not been stipulated into evidence. Thus, the Full Commission finds it reasonable to reopen the evidentiary record in this matter and remand this case to the Deputy Commissioner for the taking of evidence and rehearing, if necessary, regarding the issue of the plaintiff's average weekly wage.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. "The test for determining the liability of special employers in loaned employee cases is stated as follows: When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if (a) the employee has made a contract for hire, express or implied, with the special employer; (b) the work being done is essentially that of the special employer; and (c) the special employer has a right to control the details of the work. When all three of the conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation." Brown v.Friday Services, Inc., 119 N.C.App. 753, 460 S.E.2d 356 (1995). An implied contract exists between a temporary employee and a special employer where the temporary employee accepts an assignment from the special employer and performs the work at the direction and under the supervision of the special employer.Id. In the present case, all three conditions of the "special employment" test have been met. First, an implied contract existed between the plaintiff and defendant CF Foods because the plaintiff accepted the work assignment from defendant CF Foods and performed the assigned work at the direction and under the supervision of defendant CF Foods. Second, the plaintiff was performing work for defendant CF Foods when he was injured. And finally, defendant CF Foods controlled the details of the plaintiff's work. In sum, the plaintiff was performing work as a loaned servant on behalf of defendant CF Foods at the time of his injury, and thus was a joint employee of Staff Mark and CF Foods.
2. The plaintiff is entitled to a ten percent (10%) increase in compensation to be paid by defendants CF Foods and Safeco as a result of CF Foods' willful failure to comply with the occupational safety and health laws and regulations of North Carolina. N.C. Gen. Stat. § 97-12.
3. The defendants are not entitled to a ten percent (10%) reduction in the plaintiff's compensation. N.C. Gen. Stat. §97-12.
4. Defendants Staff Mark and AIG failed to timely file a Form 19 and Form 60 as required by the North Carolina Workers' Compensation Act and by the N.C. Industrial Commission Rules. Consequently, in the discretion of the Commission, appropriate reasonable sanctions should be assessed against defendants Staff Mark and AIG. N.C. Gen. Stat. §§ 97-18, 97-92; and N.C. Industrial Commission Rules 104, 601, and 802.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to the attorney's fee approved below, defendants CF Foods and Safeco shall pay a ten percent (10%) increase, or penalty, on all past and future compensation owing to the plaintiff, including all temporary total disability compensation.
2. Defendant Staff Mark and its carrier AIG shall pay a reasonable sanction of $250.00 to the N.C. Industrial Commission for failure to timely file Industrial Commission forms.
3. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the benefits awarded pursuant to paragraph one is hereby approved to be deducted from sums due the plaintiff and paid directly to the plaintiff's counsel in one lump sum of the accrued amount due the plaintiff, and thereafter by defendants CF Foods and Safeco paying every fourth penalty check directly to the plaintiff's counsel.
4. Defendants CF Foods and Safeco shall pay an expert witness fee to James B. Howard in the amount of $1,206.25.
5. The evidentiary record in this matter is hereby REOPENED and this case is hereby REMANDED to the Deputy Commissioner for the taking of evidence and rehearing, if necessary, regarding the issue of the plaintiff's average weekly wage, and the entry of an Opinion and Award that is consistent with the Award provided herein.
6. Defendants CF Foods and Safeco shall pay the costs due the Commission.
This 10th day of August 2006.
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ PAMELA T. YOUNG COMMISSIONER